IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

NO. 7:19-CR-75-FL-1

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| BRYAN CHRISTOPHER HALL, | ) | |
| | ) | |
| Defendant. | ) | |

This matter comes before the court on defendant's motion to suppress certain evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution. (DE 86). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), United States Magistrate Judge Robert B. Jones, Jr., entered memorandum and recommendation ("M&R"), wherein it is recommended that defendant's motion be denied. (DE 122). Defendant timely objected to the M&R. In this posture, the issues raised are ripe for ruling. For the reasons that follow, defendant's motion is denied.

## STATEMENT OF THE CASE

On May 9, 2019, defendant was indicted for conspiracy to possess with the intent to distribute and distribute heroin and cocaine base, several counts of distribution of a quantity of heroin, distribution of a quantity of cocaine base, possession with intent to distribute 28 grams or more of cocaine base and a quantity of heroin, and knowingly possessing a firearm having been convicted of a crime punishable by imprisonment for a term exceeding one year.

Pursuant to the court's initial scheduling order, pretrial motions in the instant matter were due June 14, 2019. After receiving two extensions of time, defendant timely filed the instant

<br>

<br>

motion to suppress on September 13, 2019. Evidentiary hearing was held before the magistrate judge on December 19, 2019. The court heard testimony from Paul McMahon ("McMahon") of the New Hanover County Sheriff's Office, as well as Charles Boyce ("Boyce"), Carlos Sanchez ("Sanchez"), and Kirti Vithalani ("Vithalani") of the Wilmington Police Department. The court also admitted documentary and video evidence.

Several months later, the magistrate judge ordered that the parties file supplemental briefs on whether exigent circumstances justified warrantless search of defendant's car, and whether the good faith exception to the exclusionary rule applies in the instant case. After receiving the parties' additional briefs, the magistrate judge issued his M&R on May 11, 2020. Defendant objected to portions of the magistrate judge's findings.

## STATEMENT OF FACTS

On the evening of February 4, 2019, McMahon was patrolling in his marked car on Market Street in Wilmington, North Carolina. (Transcript of Hearing ("Tr.") (DE 118) 7:18–8:25). As McMahon was traveling down the street, he saw a white Ford Taurus with a temporary license plate in the rear window but could not observe the information on the plate as required by law. (Tr. 9:1–10). As the car turned onto North 30th Street and off Market Street, McMahon initiated his lights and sirens to stop the vehicle. (Tr. 9:11–14; McMahon Video (Def. Ex. A) 00:32–00:33). Within thirty seconds, the vehicle maintained its speed of 25 to 30 miles per hour and proceeded on North 30th Street for a quarter mile until stopping in the driveway next to a residence. (Tr. 13:10–14, 15:2–5, 16:4–21, 55:8–12; see McMahon Video 00:33–01:03; Road Map (Gov. Hrg. Ex. 1)). The driveway was a dirt road adjacent to the house. (McMahon Video at 01:03–01:08; Google Map Image (Gov. Hrg. Ex. 2)). The Ford Taurus was parked in that part of the driveway approximately five or six feet off North 30th Street and adjacent to the porch. (Tr. 53:11–15,

2

57:14–17; see McMahon Video 01:03–01:38). Two other cars were already in the driveway, one of which was occupied by two persons. (Tr. 16:15–25).

McMahon saw no reason that the car could not stop immediately, given that North 30th Street is not that busy, he had stopped many cars in the area, and drivers on that road usually pulled over right away. (Tr. 13:19–25). Because the car was slow to stop, McMahon believed, based on his experience, that the driver could be trying to conceal something in the vehicle or reach a place where he could jump out of the car and run. (Tr. 14:3–17). McMahon called for backup. (Tr. 15:6–18, 19:1–7, see Tr. 32:12–19).

McMahon exited his vehicle, approached the driver's window of the Ford Taurus, spoke to the driver, later identified as defendant, and requested his identification. (Tr. 17:6–13, 17:20–21; McMahon Video 01:03–01:16). Defendant produced an identification card, and McMahon returned to his vehicle, observing along the way the registration for the temporary tag in the window of the Ford Taurus.[1] (Tr. 17:22–25, 18:17–21; McMahon Video 01:16–01:44). McMahon then ran the registration for the temporary tag and defendant's identification number in the computer system. (Tr. 18:21–22; see McMahon Video 01:44–03:55). From these queries, McMahon learned that defendant's driver's license had been suspended, defendant had several prior narcotics charges and one firearms charge, and the temporary license plate matched a Chrysler rather than a Ford Taurus. (Tr. 19:8–20:2, 20:20–21:6). Because of defendant's criminal history and the fact that defendant had been slow to stop, McMahon believed that defendant might possess firearms or narcotics in the vehicle, so he requested a K-9 unit respond to his position. (Tr. 20:9–16; see McMahon Video 03:58–04:13). McMahon exited his vehicle, approached the defendant, and asked about the fictitious tag. (Tr. 21:19–22:1; McMahon Video 05:42–06:32).

---

[1] Shortly after McMahon first approached the Ford Taurus, Boyce and Leonard arrived. (Tr. 19:1–4, 32:1–2, 32:7–11, 34:2–5).

3

McMahon then returned to his patrol vehicle again to write citations. (See Tr. 44:25–45:4; McMahon 06:32–07:30).

While McMahon was writing the citations, Vithalani responded to the scene. (Tr. 22:14–23:2, 44:25–45:4, 97:10–16; see Vithalani Video (Def. Hrg. Ex. 2) 00:30–00:45). After arriving on scene, Vithalani conferred with McMahon, identified the Ford Taurus as the object to perform a K-9 sniff on. (Tr. 97:17–98:6; McMahon Video 12:15–12:55; Vithalani Video 01:06–02:05). Vithalani then retrieved K-9 Sultan from his patrol vehicle and returned to the scene. (Vithalani Video 02:05–04:58). Officers asked the occupants to exit the Ford Taurus and relocated them away from the vehicle for safety reasons. (Vithalani Video 04:58–07:18; Tr. 98:10–13). Sultan began the sniff at the rear passenger area, went up the passenger side of the vehicle, around the front of the car and down the driver's side to the area outside the open driver side door. (Tr. 100:7–101:1; Vithalani Video 07:30–07:50). Vithalani observed Sultan go around to the open side of the door, saw Sultan's head go down and pop back up, and then observed Sultan alert to narcotics by sitting. (Tr. 101:1–102:7). Vithalani testified that he never saw Sultan enter the vehicle. (Tr. 101:9–102:7, 122:23–123:2, 125:16–25, 127:10–15; but see Vithalani Case Supplemental Report (Def. Hrg. Ex. 1) ("SULTAN sniffed the driver's floorboard area and sat just outside the door.")).

After Sultan alerted, the officers on scene searched the car and found a bag containing drugs in the driver's side floorboard. (Tr. 48:2–49:6; see McMahon Video 19:30–22:43). One of the passengers, Terriwanna Carmichael, said that the drugs were hers and precisely described the contents of the bag. (Tr. 82:16–83:8). Defendant was arrested for driving without a license and driving with a fictitious tag. (Tr. 19:12–17, 20:23–21:6).

4

**COURT'S DISCUSSION**

A.    Standard of Review

The district court reviews de novo those portions of a magistrate judge's M&R to which specific objections are filed. 28 U.S.C. § 636(b). The court does not perform a de novo review where a party makes only "general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection, the court reviews only for "clear error," and need not give any explanation for adopting the M&R. Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis, 718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

B.    Analysis

    1.    Search

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. As used in the Fourth Amendment, a "search" means an unlicensed physical intrusion into a constitutionally protected area. Florida v. Jardines, 569 U.S. 1, 5 (2013). Alternatively, a "search" means an infringement of an expectation of privacy that society is prepared to consider reasonable. United States v. Jacobsen, 466 U.S. 109, 113 (1984) (citations omitted); see United States v. Jones, 565 U.S. 400, 409 (2012). Defendant advances two theories as to when the search in this case began: 1) when law enforcement brought Sultan into the curtilage of his home, and 2) when Sultan

5

allegedly sniffed the interior of his vehicle. The government implicitly contends that it searched defendant's vehicle only after Sultan alerted to drugs.

Turning to defendant's first theory, curtilage is "an area adjacent to the home and 'to which the activity of home life extends.'" Fla. v. Jardines, 569 U.S. 1, 7 (2013) (quoting Oliver, 466 U.S. at 182, n.12); see also California v. Ciraolo, 476 U.S. 207, 212–213 (1986) ("The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened."). Factors guiding the court's inquiry into whether a particular area constitutes curtilage include "the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." United States v. Dunn, 480 U.S. 294, 301 (1987). These factors are not "mechanically applied" — rather, the "centrally relevant consideration" is "whether the area in question is [] intimately tied to the home itself." Id.

In certain instances, driveways can be part of the curtilage of the home. See Collins v. Virginia, 138 S. Ct. 1663, 1670–71 (2018) (holding that a "partially enclosed top portion of the driveway that abuts the house" was curtilage); United States v. Alexander, 888 F.3d 628, 633–34 (2d Cir. 2018) (holding the driveway area in front of defendant's backyard shed that was just few steps from back door of defendant's residence was curtilage). However, a driveway may not be curtilage in instances where it is "adjacent to a home, not enclosed, abutting a sidewalk or alley, with no steps taken to obstruct the view of passersby." United States v. Coleman, 923 F.3d 450, 456–57 (6th Cir. 2019) (citing United States v. Galaviz, 645 F.3d 347, 356 (6th Cir. 2011)); United States v. Beene, 818 F.3d 157, 162 (5th Cir. 2016); see United States v. Breza, 308 F.3d 430, 435

6

(4th Cir. 2002) ("[P]roximity of the area to the home must be considered in light of the other Dunn factors."). Using an area to park cars is not itself an "intimate activit[y] associated with domestic life and privacies of the home." United States v. Jenkins, 426 F. Supp. 2d 336, 339 (E.D.N.C. 2006); see Alexander, 888 F.3d at 633–34 (placing emphasis on use of the driveway for recreation, not parking, when considering whether the driveway was an area to which activities of home life extend).

The instant case is analogous to Coleman, Galaviz, and Beene. Here, the video evidence and testimony elicited at suppression hearing shows that defendant was parked on a portion of the driveway "right next" to his house.[2] (Tr. 16:17–21; McMahon Video 01:03–01:08). However, the remaining Dunn factors do not support a determination that the disputed location was curtilage. Assuming the relevant portion of the driveway was regularly used for parking, (see Tr. 16:15–25; McMahon Video 01:07), such use is not the type of intimate activity associated with home life. The area in which defendant parked the Ford Taurus was about five or six feet adjacent to the roadway. (Tr. 53:11–15, 57:14–17. In addition, there no enclosure of the home or the driveway, and defendant took no steps to obstruct the view of passersby or otherwise protect the privacy of his driveway. (See McMahon Video 01:03–01:38).

Defendant argues that his failure to enclose or otherwise make private his driveway is not determinative, citing Collins for the proposition that "a parking patio or carport into which an officer can see from the street is no less entitled to protection from trespass and a warrantless search than a fully enclosed garage." 138 S. Ct. at 1675. Defendant's reliance on Collins is unpersuasive. First, defendant selectively quotes the Court by omitting the first part of the relevant

---

[2]     Defendant erroneously interprets McMahon's testimony to be that defendant's car was five or six feet from the house. McMahon actually testified that defendant's car was five or six feet from the road, and that defendant's car was "right next" to the house. (See Tr. 16:17–21, 53:11–15, 57:14–17).

7

sentence, which begins: "[s]o long as it is curtilage . . . ." Id. Second, defendant ignores the context of the Court's discussion, where the Court explained why it rejected a bright line rule proposed by the government that "the automobile exception does not permit warrantless entry into the physical threshold of a house or a similar fixed, enclosed structure inside the curtilage like a garage." Id. at 1674 (internal quotations omitted). Here, the court's determination is limited to individualized consideration of the facts of this case, rather than a bright line rule. Third, in the case before the Supreme Court, it expressly relied upon the fact that the driveway was "partially enclosed" in addition to proximity to the house to determine that the relevant location was curtilage. Id. at 1670–71. In sum, Collins does not support defendant's sweeping position that proximity to the home is determinative of the curtilage inquiry.

Defendant further argues that it is "patently unfair" for the court to find that portions of his driveway are not part of the curtilage of his home because defendant did not argue or solicit testimony on the issue at evidentiary hearing. This argument falters for several reasons. It is defendant's burden to show that the Fourth Amendment protects his interest in the place searched. United States v. Bullard, 645 F.3d 237, 242 (4th Cir. 2011). Defendant placed the issue of whether his vehicle was parked within the curtilage before the court and implicitly addressed the issue of curtilage both in briefing and at evidentiary hearing by focusing on the proximity of defendant's car to the home.[3] (See Mot. to Suppress (DE 86) at 9–10; Tr. 57:14–17, 130:1–6, 136:11–25, 142:12–18, 143:4–11). The government also never conceded the issue of whether the area searched is curtilage, and defendant was further heard in opposition to the government's

---

[3] Defendant erroneously argues that McMahon testified defendant's car was five or six feet from the house, when McMahon testified that defendant's car was five or six feet from the road. (See Tr. 53:11–15, 57:14–17).

supplemental response explicitly challenging his curtilage argument following hearing. For all these reasons, the court is not precluded from passing on defendant's legal argument.

In sum, Vithalani and Sultan circling defendant's vehicle was not an unlicensed trespass into the curtilage of defendant's home. Rather, the two were in an undeveloped, unenclosed open field abutting the public road and right next to defendant's home.[4]

Turning to defendant's second theory, "the use of a well-trained narcotics-detection dog— one that 'does not expose noncontraband items that otherwise would remain hidden from public view,' . . . — during a lawful traffic stop, generally does not implicate legitimate privacy interests." Illinois v. Caballes, 543 U.S. 405, 409 (2005) (quoting United States v. Place, 462 U.S. 696, 707 (1983)). The court finds that Sultan sniffed from the exterior of the vehicle and never breached the interior of defendant's car. The court credits Vithalani's sworn testimony that he never saw Sultan enter the car over the K-9 report relied upon defendant. (Tr. 122:23–123:2, 125:16–25, 127:10–15; see Vithalani Video 07:30–07:50). Defendant argues that because Vithalani saw Sultan's head dip down and pop back up, he must have entered the car. (See Tr. 101:9–102:15). The court rejects this argument.[5] Accordingly, Sultan's sniff of the car was not a search.

For Fourth Amendment purposes, the search of defendant's vehicle occurred when officers spent several minutes rummaging around defendant's car before finding a bag containing drugs in the driver's side floorboard. (See Tr. 48:2–49:6; McMahon Video 19:30–22:43).

2.   Reasonableness

---

[4]   For the same reasons, the court concludes that defendant did not have a reasonable expectation of privacy in the area outside of his vehicle. See Oliver, 466 U.S. at 179.

[5]   Even if Sultan had breached the interior of the vehicle when sniffing, such act still would not be a search because he instinctively followed a detected odor to its source without any prompting from his handler Vithalani. (See Tr. 96:24–97:4, 102:3–15, 104:13–23, 108:19–109:1, 109:8–110:4, 123:3–5); see, e.g., United States v. Sharp, 689 F.3d 616, 619 (6th Cir. 2012); United States v. Pierce, 622 F.3d 209, 213–14 (3d Cir. 2010); United States v. Lyons, 486 F.3d 367, 373 (8th Cir. 2007).

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment — subject only to a few specifically established and well-delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967); see Chambers v. Maroney, 399 U.S. 42, 51 (1970) (explaining that a constitutionally reasonable search generally must be supported by probable cause and either a warrant or exception to the warrant requirement).

Sultan's alert to drugs in the automobile provided law enforcement with probable cause to believe the vehicle contained contraband. (See Tr. 19:18–20:13, 101:1–102:7). The record shows that law enforcement never obtained a warrant to search defendant's car. (See Tr. 47:5–48:16; McMahon Video 19:20–22:43). And, finding no clear error, the court adopts as its own the M&R's analysis that no exigent circumstances were present in the instant case.[6] (See M&R (DE 122) at 12–16). Thus, the search was constitutionally unreasonable unless another exception to the warrant requirement applies.

"Police typically must obtain a warrant to carry out a search, but an exception to the warrant requirement has long been recognized where probable cause is established to believe that a vehicle contains contraband or evidence of a crime." United States v. Lawing, 703 F.3d 229, 239 (4th Cir. 2012) (citing Carroll v. United States, 267 U.S. 132, 153 (1925)). "Even in cases where an automobile [is] not immediately mobile, the lesser expectation of privacy resulting from its use as a readily mobile vehicle justifie[s] application of the vehicular exception." United States v. Kelly, 592 F.3d 586, 590–91 (4th Cir. 2010) (citing California v. Carney, 471 U.S. 386, 392–93 (1985)). In sum, "[i]f a car is readily mobile and probable cause exists to believe it contains contraband,

---

[6] Neither defendant nor the government objected to this portion of the M&R.

the Fourth Amendment . . . permits police to search the vehicle without more." Maryland v. Dyson, 527 U.S. 465, 467 (1999) (per curiam) (citations omitted).

In the instant case, defendant's automobile "was clearly operational and therefore 'readily mobile.'" United States v. Brookins, 345 F.3d 231, 237–38 (4th Cir. 2003). Immediately prior to the search in question, defendant drove his Ford Taurus to 303 North 30th Street and parked in the driveway of his residence. (See Tr. 9:11–14, 13:10–14, 15:2–5, 16:4–21, 55:8–12; McMahon Video 00:33–01:03). Under such circumstances, the automobile exception applies.

Relying upon Collins, defendant contends that the automobile exception does not apply in the instant case. See 138 S. Ct. at 1672; see also United States v. Bradshaw, 490 F.2d 1097, 1099, 1103 (4th Cir. 1974) (holding that the automobile exception did not extend to search of a truck for moonshine near defendant's residence following a search of adjacent fields for a moonshine still). However, as explained above, the search of defendant's automobile did not occur within the curtilage of his home.

Relying on Beene, defendant argues that exigent circumstances generally are required to search a vehicle in a residential driveway. See 818 F.3d at 164. However, the cases cited by Beene clarify that "we have not extended that ruling to a vehicle parked in any driveway." See United States v. Guzman, 739 F.3d 241, 246 n.8 (5th Cir. 2014) (emphasis in original). Moreover, the law of this circuit makes clear that exigent circumstances other than ready mobility are not required to invoke the automobile exception, and that automobile exception may extend to private, residential property. See Dyson, 527 U.S. at 467; Kelly, 592 F.3d at 590–91; Brookins, 345 F.3d at 237–38 & n.8.

Because probable cause supported the officers' search of defendant's car and the automobile exception to the warrant requirement applies, the search was constitutionally reasonable.[7]  No violation of the Fourth Amendment occurred.

## CONCLUSION

Based on the foregoing, defendant's motion to suppress (DE 86) is DENIED.

SO ORDERED, this the 6th day of August, 2020.

                                                LOUISE W. FLANAGAN
                                                United States District Judge

---

[7] The court does not reach the issue of whether the good faith exception to the exclusionary rule applies in the instant case.  See Davis v. United States, 564 U.S. 229, 240–41 (2011).